# CASES IN CHANCERY.

## DELAWARE.

In re Estate of Moses Journey, Deceased.

New Castle, September Term, 1892.

**Wills — construction of; Trustees under a will to sell land — powers of; Remainders — vested or contingent.**

1. It is a well-settled rule in equity, that land directed to be converted into money, or money into land, will be considered as that species of property into which it is directed to be converted. It is equally well settled, that the beneficiaries under a will, in which their interests arise from money, or land, ordered to be converted into one or the other, take as legatees or devisees according to the nature or quality of the property in its converted state or condition.

2. A devise to a wife for life, and after her death, the land to be sold and proceeds divided among the children, share and share alike, gives a vested interest to the children.

3. A devise for life to the wife, and after her death, the land to be sold, and proceeds divided among the children; the legal estate and title descends to the children and vests in them between the death of testator and actual conversion by sale.

4. An authority to make a sale of lands, under a will, is a mere naked power which carries with it no estate or title to the trustee or person having in charge the execution of the will.

5. The testator, by item 2 of his will, devised to his wife,. M. J., a farm during her life; and at her death, directed same to be sold, and the proceeds thereof to be equally divided among his children, share and share alike. Held,—

a. That the interest to the children was a vested one, and that grandchildren took their parent's share.

b. That the legal estate in the land, between the death of the testator and the actual conversion of the same, descended to the children of the testator; and,

c. That one of the said children who lived on the land for a period between the death of the tenant for life and the sale of the land, was liable to the other children either on a contract for rent, or in case for use and occupation, less the value of permanent improvements made b· him.

PETITION of Sarah Ann Munday for construction of certain portions of the will of Moses Journey, deceased. The facts are stated in the opinion of the Chancellor.

Benjamin Nields, for Sarah Ann Munday.

In the will of Moses Journey is found the following: "Item 2. I give and bequeath to my wife, Margaret Journey, all my personal property of whatever description and wherever situated, absolutely and forever. I also devise and bequeath to my wife Margaret Journey, my farm, situated in Christiana Hundred, and known as " Oak Hill," for and during the natural term of her life, and at her death, I desire said farm to be sold and the proceeds divided equally among my children, share and share alike."

On the principle that equity considers that as done which ought to have been done, it is well established that.

land directed to be sold and turned into money is to be
considered as that species of property into which it is
directed to be converted.    The owner of the fund, or the
contracting parties, may make land money, or money
land.    It follows, therefore, that every person claiming
property under a will or settlement directing its con-
version, must take it in the character which such in-
strument has impressed upon it; and its subsequent devo-
lution and disposition will be governed by the rules ap-
plicable to property of this kind.    This doctrine is
founded in justice and good sense; since it would be
obviously unreasonable that the condition of the prop-
erty, as between the representatives of the parties bene-
ficially interested, should depend on the acts of persons
through whom, instrumentally, the conversion is to be
effected and in whom no such discretion is expressed to
be reposed.    The principle is, besides, too well sup-
ported by numerous authorities, to be called in ques-
tion at this day.

So, in the case of real estate, whether freehold or
copyhold, being directed to be sold, and the proceeds
bequeathed to A., who, after surviving the testator, hap-
pens to die before the sale, the property devolves to his
personal, not his real, representative, with all the in-
cidental qualities of personal estate.    1 Jarman on
Wills, 584, 585.

"Testator devised real estate to his daughter for life,
and then to be sold and the proceeds divided amongst
her children.    One of her children died in her lifetime,
having devised his share of the estate to his son; held
(Sir James Wigram, V. C.), the deceased child took

his share of the estate as personalty in reversion expectant on his mother's death, and, consequently, his executrix and not his son was entitled to it." Elliott v. Fisher, 35 Eng. Ch. Rep. *505.

"I will and bequeath to my wife Jane, the whole of my real estate during the whole of her life, if she remain my widow. At my wife's decease, my real estate to be sold and equally divided amongst my nephews and nieces, each to have an equal share."

"One of the nieces married and died in the life of the widow, intestate and without issue. Held, 1st, that the direction to sell was a conversion; 2d, the legacies to the nephews and nieces were vested; and 3d, that the husband of the nieces was entitled to her legacy."

If the direction to sell is absolute, it is no exception to the rule that land directed to be sold and turned into money is to be considered as money, from the death of the testator, for all the purposes of the will, because the period of sale is remote and the conversion cannot be made until the time arrives. The testator in the case before us directed, at his wife's decease, his real estate to be sold and equally divided amongst his nephews and nieces. The direction is positive and explicit; and it follows that it operated as conversion of the real estate into money from the testator's death and that it is to be treated as money for all the purposes of his will. Were, then, the legacies to the testator's nephews and nieces vested or contingent? Where the fund, which is the subject of the legacy, is given to another person beneficially for life, or until the legatee arrives at a particular age, or until certain debts are paid, the legatee will take an immediate vested interest

in the subject, since such bequests are in the nature of remainders, the rule as to which is, that the interest of the first and subsequent takers vest together.    Lane v. Goudge, 9 Ves. 226; Balmain v. Shore, id. 507.

There can be no doubt under these authorities that the legacies in this case vested in the testator's nephews and nieces immediately on his death.

" The testator was making an equal distribution of his real estate among his nephews and nieces, and the distribution was postponed, in order to make comfortable provision for the widow in lieu of her dower under the Intestate Act.   If this necessity had been out of the way, the distribution would have been immediate. There was no consideration or circumstance, immediately connected with the legatees, which was the ground of the postponement.   It cannot be reasonably inferred that the testator intended that the gift to his nephews and nieces should depend on their surviving the widow; and that if they died during her life, leaving issue, their shares should go to the next of kin to the exclusion of their children.   If there had been no conversion of the real estate, there can be no doubt that they would have taken a vested interest in the remainder.   Why should the direction to sell and divide the proceeds make the gift contingent?   The wife's decease is not a condition precedent to its vesting, but is merely the time fixed for its enjoyment."   In re Estate of Dr. George Stevenson, Deceased, 3 Del. Ch. 197.

Lewis C. Vandegrift, for John Journey.

At common law one tenant in common could not collect from the other any rent for occupation of the

premises, nor had one tenant in common any remedy against another for an exclusive occupation of the premises. This rule of the common law was changed by the statute 4 Anne, chap. 16, § 27: "An action of account may be maintained against the personal representative of any guardian, bailiff or receiver, and also by one joint tenant or tenant in common or his personal representative against the other as bailiff for receiving more than comes to his just share or proportion, or against the personal representative of any such joint tenant or tenant in common."

This statute was interpreted by the English courts to mean that such an action would lie against a tenant in common who had received from some third person more than his share or proportion of what that third person had paid for the tenancy of the property in question, and that it did not extend to the case where one of the tenants in common occupied the premises himself. In the latter case there could be no recovery by one out of possession against the one in possession under the statute 4 Anne. Henderson v. Eson, Eng. C. L. 701.

The above-cited authority has been followed by most of the American courts, especially Massachusetts, New York, Maryland and California.

There would, therefore, be no doubt about the inability of one tenant in common to collect rent from another in Delaware, were it not for the statute in this State, which provides that "a tenant in common * * * may maintain against his co-tenant an action on the case for use and occupation."

This statute is anything else than explicit, and words must be supplied in order that its meaning may be understood.    It evidently means that such an action may be maintained when one tenant in common has received more than his just share or proportion of the rents and profits of the estate; and is, therefore, practically the same as the statute of 4 Anne.

The only way such a tenant could receive more than his just proportion by use and occupation would be by the act constituting hi᷎ a bailiff for the other.

This is impossible, for he went into possession without opposition from the other tenant; did nothing to exclude his co-tenant from a common occupation of the premises and made him no contract or promise to pay him rent therefor.

Each tenant in common is seized *per my et per tout*, and, therefore, the tenant had the right to occupy a part of every part of the premises in question.

In order to recover in such an action, the plaintiff co-tenant would have to show that his co-tenant in possession occupied the whole of the premises, and that he took from the premises the whole of its product and that, after paying the expenses, there remained a profit.

The allegations necessary to sustain proof that would be sufficient for a recovery in a case of this kind, must be that the tenancy in common exists, and how it exists, that the tenant in possession excluded his co-tenant therefrom and that he took all the profits from all the property.

It is not enough to show merely that one co-tenant was in possession, because this in itself would not entitle a recovery by another co-tenant.    The fact that the

latter would not consent that the former should come into possession, or would not make a bargain with him as to rent, would not prevent his occupancy of the premises, and an endeavor upon the part of the occupant to make the most he could out of the estate in which he had an interest. Were this the case, one co-tenant, by acting the part of the dog in the manger, might allow the estate to go to waste and ruin.

The cases supporting what I have above stated are, Sargant v. Parsons, 12 Mass. 149; Sheppard v. Richards, 2 Gray, 424; Davidson v. Thompson, 22 N. J. Eq. 85; Barrel v. Barrel, 25 id. 175; Isarel v. Isarel, 30 Md. 125; Woolaver v. Knapp, 18 Barb. 265.

Returning now to the statute in our own State, it will be seen that a recovery for use and occupation is allowed upon the ground that the tenant is in possession by permission without demise by deed or contract under seal for the rent. Such a permission could not exist between tenants in common, because each is entitled to occupy the whole and every part of the property in question. If one tenant kept another out, then there could be no recovery for use and occupation, for reason that under the authorities he would be a disseizor, and rent cannot be claimed from one who has disseized another, but the remedy of the one disseized is by ejectment to recover his possession and establish his title.

I, therefore, submit that from what I have heretofore said, and the authorities cited, that the petition of Sarah Ann Munday has shown no right to collect rent from her co-tenant John Journey, who was in possession of the premises of Moses Journey, deceased. The fact that

there was no tenancy is also shown from the petition for the appointment of a trustee, originally filed in this case, where it is set forth that there is no one having authority to rent the property in question or collect the rents therefrom.

The unfairness of the claim made in the petition of Sarah Ann Munday can be realized when it is considered that each co-tenant " has at all times the right to enter upon and enjoy every part of the common estate, this right cannot be impaired by the fact that another of the cotenants absents himself or does not choose to claim his right to an equal and common enjoyment; it would be inequitable to compel a co-tenant in possession to account for the profits realized out of his skill, labor and business enterprise when he has no right to call upon his co-tenant to contribute anything toward the production of these profits, nor to bear his proportion, when, through bad years, failure of crops, or other unavoidable misfortunes, the use made of the estate resulted in a loss instead of a profit to the one in possession."

The next question submitted is whether John Journey can collect from the fund now in the court before it is divided among the co-tenants entitled, compensation for services rendered and expenses incurred in caring for said property while he was in possession thereof, and put it in salable condition.

That he should be reimbursed for such services and expenses is supported by the following authorities: Dech Appeal, 57 Penn. St. 472; Davidson v. Thompson, 22 N. J. Eq. 85; Hannan v. Osborne, 4 Paige, 343.

WOLCOTT, CHANCELLOR.— Moses Journey was, in his lifetime, and at the time of his death, seized in his demesne as of fee of and in a certain farm or tract of land known as Oak Hill, situated in Christiana Hundred, New Castle County, and State of Delaware; and that while so thereof seized, he duly made and published his last will and testament; by item 2 of which, he devised to his wife, Margaret Journey, said farm or tract of land during the term of her natural life; and at her death directed the same to be sold and the proceeds thereof to be equally divided among his children, share and share alike.

In said will he nominated and appointed Victor du Pont, Esq., to be the executor thereof.

That the said testator afterward, to-wit, in the month of March, A. D. 1879, departed this life and left to survive him his widow, Margaret Journey, and six children, namely: John Journey, Henry Journey, George Journey, Moses Journey, William Journey and Sarah Ann Munday.

That the above-named William Journey, on or about the 26th day of October, A. D. 1879, departed this life, leaving to survive him three children, namely: Emma Journey, William Journey and Margaret Journey, now the wife of Samuel Chambers. All of said children being now over twenty-one years of age.

That the above-named Moses Journey, the younger, on or about the 9th day of July, A. D. 1887, departed this life, leaving to survive him five children, namely: Mary Journey, now the wife of James H. Massey, and over the age of twenty-one years; and William Journey,

Margaret Journey, Joseph Journey and Edward Journey, all of whom are infants, and represented in this proceeding by guardians.

That from and after the death of the said testator, his said widow, the said Margaret Journey, held said farm or tract of land under said devise as tenant for life until her death, which occurred about the 14th day of October, A. D. 1890.

That on the 19th day of October, A. D. 1891, upon the petition of all the parties in interest, it was ordered by the Chancellor that the said lands and premises be sold at public vendue, and that the proceeds arising from the sale thereof, after deducting the necessary expenses, be equally divided among the children of said testator pursuant to said last will and testament; and to that end Benjamin Nields, Esq., was appointed trustee, to make said sale as in said order directed.

It was further ordered by the Chancellor that the said trustee should enter upon, hold and manage said farm or tract of land, collect the rents, issues and profits thereof, from the time of the death of the said Margaret Journey, until such time as the sale of said lands and premises should be made and confirmed, and should duly account for the same.   That the return of the proceedings of said trustee under said order should be made at the next term of the Court of Chancery sitting in New Castle County.   That on the 29th day of March, A. D. 1892, the said trustee made return to this court that he did on the 21st day of November, A. D. 1891, sell the said lands and premises to James Brown for the sum of $6,000, he being the highest and best bidder

therefor, which said return and the sale therein set forth were proved and confirmed; and the purchase money, to-wit, the sum of $6,000, having been paid to the said trustee, he was ordered by the Chancellor to execute and deliver to the purchaser of the said premises, a deed, conveying to the said James Brown all the estate and interest of the said Moses Journey the elder, at the time of his death, to and in the premises so sold.

It was further ordered by the Chancellor that the balance of the purchase money, after deducting the cost and expenses of sale, to-wit, the sum of $5,789.98, be deposited by the said trustee in the Farmers' Bank at Wilmington, to the order of this court, there to remain subject to the further order of the Chancellor.

That on the 25th day of March, A. D. 1891, the said John Journey, one of the children of the said testator, entered upon the said lands and premises and occupied and used the same until the 25th day of March, A. D. 1892.

It is contended by the other parties in interest, that he, the said John Journey, entered into the possession of said lands and premises under an agreement between himself and them, made with the said Henry Journey and George Journey in their behalf, whereby he, the said John Journey, was to pay an annual rent of $250 for the use and occupation of said lands and premises for the year expiring on the 25th day of March, A. D. 1892.

It is admitted by the said John Journey that he has not paid the said trustee the said rent, and he denies that he is liable to pay any rent. He further claims that the money which he expended while on said farm

and the work which he performed in the making and erecting of permanent improvements .thereon, should be deducted from the said amount on deposit in the Farmers' Bank at Wilmington to the credit of this court, and the balance thereof distributed among the parties entitled under the will.

The first question arising under the will of the said testator is, what interest do the children of the deceased children of the testator take in the fund to be distributed? It is a well-settled rule in equity, that land, directed to be converted into money, or money into land, will be considered as that species of property into which it is directed to be converted. It is equally well settled, that the beneficiaries under a will in which their interests arise from money or land ordered to be converted into one or the other, take as legatees or devisees according to the nature or quality of the property in its converted state or condition.

Let us apply these equitable principles to the case in hand.

The late Moses Journey, deceased, by item 2 of his last will and testament, after the death of his widow, ordered his farm or tract of land known as Oak Hill to be sold, and the proceeds thereof equally divided among his children, share and share alike. The only interest which they had under said will was in the proceeds of the sale made in pursuance of the authority contained in said item of said will. Therefore, the share or interest of each of his children, living at the time of his death, in the fund to be produced by the sale of the farm was legally a pecuniary legacy. Was it vested or contin-

gent? Clearly it was not contingent, for the right to it vested immediately upon the death of the testator, since the conversion of the land into money in equity was considered complete at the moment of his decease.

The title of each legatee to his or her share of the fund to be created by the sale of the land, was absolutely free from any element of uncertainty. It was vested in interest, but not in possession. It was a present gift, the time for the enjoyment of which was deferred until the death of the tenant for life. The intervening life estate in the land, only operated as a postponement of the time for the payment of the legacy. The uncertainty or contingency was, therefore, annexed to the period for payment only, and not to the *corpus* of the gift. The children, therefore, of each of the deceased children of the testator are entitled by right of representation to the share of said fund to which their parent would be entitled if now living.

Another question arises upon the facts testified to at the hearing of this case in regard to the liability of Moses Journey to pay $250 for the use and occupation of said farm for the year commencing March 25th, A. D. 1891, and ending March 25th, A. D. 1892.

I am of the opinion that the legal estate and title in and to said farm and tract of land, between the death of the testator and the actual conversion of the same, descended to the children of the said Moses Journey the elder. The authority to make a sale of said lands and premises was a mere naked power which carried with it no estate or title, to the trustee or the person having in charge the execution of the will. This view

is clearly sustained by the English authorities, and also by the case of Lockwood's Administrator c. t. a. et al. v. Stradley et al., 1 Del. Ch. 298; King v. Ferguson et al., 2 Nott & McCord, 398; Warnford v. Thompson, 3 Ves. Jr. 515; 2 Sugden on Powers, 170, 171; Yates v. Crompton, 2 P. Wms. 308; Hilton v. Kenworthy, 3 East, 557; Fletcher v. Ashburner, 1 Brown C. C. 497; Cain v. Gott, 24 Wend. 660.

Admitting the rule to be as enunciated in the cases referred to, it is very apparent that the heirs-at-law of the testator had the right to contract with each other in respect to the lands and premises in question, and without any contract John Journey was liable to the other heirs or coparceners upon an action on the case for use and occupation, under section 2, chapter 86, page 527, Revised Code. Laying aside all the testimony in regard to the agreement between John Journey and Henry Journey and George Journey, he, John Journey, was and is liable to his co-tenants for the rental value of the farm for the year before referred to. It having been proven that the rental value of the farm for the year A. D. 1890, was fixed at $250 I am justified in the conclusion that that sum was a fair rent for the succeeding year; and that John Journey is liable to his cotenants for the same. The permanent improvement, which were made and erected on the farm, I am of the opinion should be a credit on the rent account. In view of the meagre testimony on that point, I feel constrained to fix the value of such permanent improvements, according to the testimony of John Journey himself and the witnesses which he produced in behalf of his claim.