## Waller's Estate.

*Executors and administrators—Trusts and trustees—Will—Costs of will contest.*

The general rule that an executor will not be allowed counsel fees and costs in a contest to sustain a will by which he was appointed, does not apply where the executor is also a trustee, under a will which establishes a spendthrift trust. In such a case the trustee is a legatee under the will, and when he accepts the trust, he owes to the interests which he represents the duty of upholding the will against any attack made upon it.

Argued Nov. 23, 1915. Appeal, No. 21, Oct. T., 1915, by Harriet C. Waller, from decree of O. C. Philadelphia Co., July T., 1909, No. 334, dismissing exceptions to adjudication in Estate of William H. H. Waller. Before RICE, P. J., ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Affirmed.

Exceptions to adjudication.

ANDERSON, J., filed an adjudication, the material portions of which were as follows:

The testator died July 15, 1909, having first made his last will and testament, with codicils thereto, duly admitted to probate, whereby after directing the payment of his just debts and funeral expenses, and the purchase of a lot in Woodland Cemetery, the erection of a stone monument and curbing for said lot, he gave to said Woodland Cemetery Company one hundred dollars in trust to apply the income to keeping said lot in order, to his wife, Harriet Chardon Waller, for the term of her natural life, the use of all his books, pictures, furniture,

332, (1916).] Adjudication.

jewelry, silverware, and all articles of personal use and wear, and after her decease gave the same absolutely to his son, Charles B. F. Waller, with substitutionary provision in case of his prior death; and authorized and directed his executor to hand over all of said articles to his wife, and allow them to remain in her possession, etc., "provided however, that if at any time my said wife, Harriet Chardon Waller shall remove from the house where we now live (being No. 212 S. Forty-first street) she shall have the right to sell such of the articles mentioned above bequeathed to her for life, as she may deem necessary and proper to sell under the circumstances, and if such sale shall be made by her the proceeds thereof shall be received by her, and kept for her own use absolutely;" and gave the residue of his estate to the accountant in trust to pay an annuity of two hundred and fifty dollars a year to each of his three sisters, Lucy D. Bonham, Kate Waller and Josephine Grogan, for the term of their respective natural lives, beginning from the date of his death, and payable quarterly; and upon the death of his sister, Josephine, should her daughter Elmort be then living, he directed his trustees to pay her the sum of one hundred and fifty dollars a year, or until she shall have survived his wife, and his two sisters above named, his son also being then living; whichever shall first happen; the annuities to be paid free and clear of any collateral inheritance or other tax, which is to be paid out of his residuary estate; and to pay to his wife, Harriet Chardon Waller, fifteen hundred dollars a year during the term of her life, in equal quarterly payments; and directed his executors as soon as possible after his death to pay to his wife, one thousand dollars in cash to be in advance upon her first year's annuity above given; and directed the above-mentioned annuities and payment to his wife to be made out of the income so far as it may be sufficient, and any deficiency made up out of principal, no one having any preference or priority of payment; and upon the death of his wife, leaving

both or either of his said sisters, he directed his trustee to pay to his son, Charles B. F. Waller, five hundred dollars annually during his life, or until the sooner termination of such annual payment as thereafter specified, such payments being made out of principal so far as is necessary, and standing on equal footing with the then running annuities; and upon the death of his wife, and also of his said two sisters above mentioned, his said son being then living, such payment shall cease; and in that event, and provided his son be then living, he gave the whole principal of his estate which may then remain to his said son for his own use absolutely, the payment of the annual sum of one hundred and fifty dollars to Elmira Grogan, if then living; terminating upon such event as above provided, and should both or either of his said sisters survive his said son, then after the death of his wife, and subject to the annuities given to his said sisters, and his said niece, he gave whatever of his estate may remain at the death of the survivor of the above-named annuitants to such person and in such shares as would then be entitled thereto if he had died at that time intestate possessed thereof, having his legal domicile in Pennsylvania.

He directed that the estate created by his will and the amounts given and bequeathed both out of principal and income to all the beneficiaries should be upon their own respective receipts, for their maintenance and support, and not liable to assignment, pledge, anticipation or alienation by them, nor subject to be taken on any attachment or other execution against them, nor for any debts, contracts or engagements then existing or thereafter created by any of them.

He authorized his executors and trustees to sell any and all of his real estate, of which he might die seized or possessed for the purpose of paying debts or for any other purpose, at public or private sale, etc., without any liability on the part of the purchaser to see to the application of the purchase-money; and appointed the

332, (1916).]                    Adjudication.

Guarantee Trust & Safe Deposit Company, and his wife, Harriet C. Waller, executors of his will.

By the first codicil he revokes the gift to his son of the silverware, etc., after his wife's death, and gave the same to the children or issue of his son then living, and in default of such children or issue, then to be divided among testator's brothers and sisters then living.

By the second codicil, he directed that his wife should receive no commission or compensation for acting as executrix.

Testator's widow renounced her right to act as executrix, and letters testamentary issued to the accountant alone.

After testator's death, a contest as to the validity of his will was made by his son, an issue granted, and the will sustained by the verdict of a jury. At the audit objection was made to the items of costs and expenses incurred by the accountant in defending the will. The general rule deduced from the cases is that where a contest is made against a will, the costs and expenses are not to be allowed to the executor out of the estate, the reason being given that it is not his interest, but that of the legatees, which is involved, and that they should pay the costs: Rankin's App., 10 W. N. C. 235; Yerkes' App., 99 Pa. 401; Titlow's Est., 163 Pa. 35. In the present case, however, if the contestant had succeeded, the estate would have been taken out of the hands of the trustee, and the bulk of it would have passed to the son under the intestate laws, and the legatees would have taken nothing under the will.

It seems to the auditing judge that as trustee at least, the executor was in duty bound to defend the rights of the cestuis que trustent; and it would seem a hardship, especially as the result of the contest has shown that it was uncalled for, and as the trust was sustained, that the accountant should be compelled to pay the costs and expenses of the contest. As was said by Judge PORTER, in Hoffman's Est., 19 Pa. Superior Ct. 70, "the trustee

was a legatee under the will, and when it accepted the trust it owed to those whose interests it represented, the duty of maintaining the will against the attack made upon it.   It is true that the contestant was one of the beneficiaries of the trust, and that he would have taken more by having the will set aside, but he was not the only party interested in the trust estate, and his father had deemed it wise to guard the trust fund against the improvidence of his son by imposing strict limitations upon his enjoyment of the income.   When the life tenant under the spendthrift trust sought to defeat the trust, created by the will of his father, the trustee upon whom the testator had imposed the duty of protecting the interests of those in remainder was not bound to suffer those interests to be swept away, and, having successfully defended them, it is entitled to be reimbursed out of the trust estate for the reasonable expenses of such defense: Titlow's Estate, supra.   The testator had so mingled the interests and rights of the beneficiaries of this fund that the duty of the appellant was to protect the trust estate as a whole, and the entire fund is chargeable for the expenses incurred in its defense."

In the present case, while it was the remainderman who was contesting the will, it was the duty of the trustee to protect the rights of the cestuis que trustent, and in doing so is, in the language of Judge PORTER, entitled to be reimbursed.   It might be that the expenses should be charged against the son's portion of the estate, but as there is nothing presently payable to him, the credits are allowed, and that question reserved for the future.

On a reference back to the auditing judge he filed a supplementary adjudication in part as follows:

The question was again raised as to the right of the executor and trustee to defend as such the will of its testator and to be compensated from the estate for the expenses of such defense; the argument being made that the executor as such, had nothing to do with the contest,

which was a matter solely between the legatees, and on that account, following the usual rule in such cases, the contest would be at the expense of the parties so interested.

While this is true as to the executors, who after all are merely stakeholders and have no interest in the assets except to gather them for the purpose of distribution, it is, as pointed out in the original adjudication, certainly not the case where the executor is also trustee. In such case he is no longer a mere stakeholder, but rather the guardian of the estate, with duties imposed upon him not only to guard against the inexperience, improvidence or extravagance of the cestui que trust, but also to safeguard the rights of the cestui que trust and those interested in remainder; and bound, in the very nature of the case, to defend the trust against the assaults of those who strive to break it down. This is the basis of the distinction made in Hoffman's Est., 19 Pa. Superior Ct. 70; and it seems to the auditing judge that, even admitting that as executor the accountant here could not recover for the expenses necessarily incurred in defending the will, it would be entitled, the trust having been upheld, to receive from the trust estate the costs of successfully maintaining its title.

The whole of this estate is given in trust, the widow being one of the cestui que trusts. It does not lie in her mouth, then, to complain of the expenditures; as, notwithstanding the fact that she had the right to take against the will and therefore would not have been affected by the contest, she has elected to take a cestui que trust, and so gets the benefit of the efforts of the accountant to sustain the trust. For these and the reasons given in the original adjudication, the auditing judge is of opinion that the costs of the contest, together with the counsel fee, should be charged against the trust estate; and the original adjudication is in this respect affirmed.

On exceptions to adjudication GUMMEY, J., filed the following opinion:

The general rule that an executor will not be allowed counsel fees and costs in a contest to sustain the will by which he was appointed, is so well established that a citation of authorities is unnecessary; in the present instance, however, the executor is also trustee under the will which established a spendthrift trust, and therefore, as pointed out in Hoffman's Est., 19 Superior Ct. 70, the trustee is a legatee under the will, and when he accepted the trust, owed to the interests which he represented the duty of upholding the will against any attack made upon it. (See also Alexander's Est., 211 Pa. 124; Scott's Est., 19 W. & S. 98.)

As it appears from the testimony that all of the costs allowed by the auditing judge represent actual disbursements made by the trustee during the progress of the litigation, we have reached the conclusion that the auditing judge committed no error in allowing them; an examination of the items, however, creates the impression that some of the costs allowed should be paid by the defendant in the will contest in accordance with the order made by the Supreme Court affirming the judgment of the court below "at the cost of the appellant" (see Guarantee Co. v. Waller, 240 Pa. 575), and if so, it is the duty of the trustee to proceed against him for their recovery.

The exceptions are dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*Trevor T. Matthews,* for appellant.—On the questions involved in this case, the following are believed to be all the authorities in Pennsylvania: Rankin's App., 10 W. N. C. 235; Royer's App., 13 Pa. 569; Mumper's App., 3 W. & S. 441; Landis' Est., 1 Philadelphia Rep. 528; Dietrich's App., 2 Watts 332; Koppenhaffer v. Isaacs, 7 Watts 170; Yerkes' App., 99 Pa. 401; Sheetz's App., 100

332, (1916).] Arguments—Opinion of the Court.

Pa. 197; Hoffman's Est., 19 Pa. Superior Ct. 70; Titlow's Est., 163 Pa. 35.

*Daniel A. Stewart,* for appellee, cited: Guarantee Trust & Safe Deposit Co. v. Waller, 240 Pa. 575; Geddis's App., 9 Watt 284; Reimer's Est., 159 Pa. 212; Scott's Est., 9 W. & S. 98; Alexander's Est., 211 Pa. 124.

PER CURIAM, March 1, 1916:

After a careful examination of this record, we are satisfied that the adjudication of this estate by the Orphans' Court is fully sustained under the authorities, and for the reasons given in the opinions therein filed, it is not necessary to add further argument.

The decree is affirmed.