*In re*, Estate of Dr. George Stevenson, deceased.

*New Castle, Feb. T.* 1859.

Equitable conversion of real estate by testamentary direction for sale— how far direction must be unqualified.

The testator, after devising his mansion house to his widow for life, provided thus :—" It is my desire that after the decease of my wife (or sooner if she should desire it) my dwelling house, &c., should be sold by my executors, hereinafter named, with the approbation of the Chancellor or an Orphans Court, and the proceeds equally divided among all my children now living, or their legal representatives." *Held*, that the real estate was equitably converted from the death of the testator.

Petition by Trustee for Instructions.—Dr. George Stevenson, by his last will and testament, made in the year 1828, after devising his mansion-house and grounds to his wife, for her natural life, further provided as follows, viz : " It is my desire that after the decease of my wife (or sooner if she should desire it) my dwelling house and ground adjacent to it, in Wilmington, should be sold by my executors hereinafter named, with the approbation .of the Chancellor or an Orphans Court, and the proceeds equally divided among all my children now living, or their legal representatives."

The testator, at his decease, left to survive him eight children and two grandchildren, the children of a deceased daughter. After his death, and during the life-time of the widow, Maria Stevenson, two of the testator's children died intestate, unmarried and without issue; that is, Francis Stevenson, one of said children, died October 9th, 1832, and Joseph B. Stevenson, another of said children, died December 13th, 1853. The widow of the testator died July 19th, 1857.

After the death of the widow, the executor, James Rogers, Esq., with the approbation of the Chancellor, signified by an order for sale granted at the Sept. T. 1857, proceeded to sell the mansion house and premises of the testator, in execution of the direction of his will, and at the Feb. T. 1858, made return of the sale, which was approved, and the proceeds ($22,020.26) after deducting expenses, were ordered to remain in the hands of the executor, for distribution under the will.

At the Feb. T. 1859, the executor by his petition, representing the facts, prayed the instruction of the Chancellor touching the distribution of those shares of the fund which would have been taken by Francis Stevenson and Joseph B. Stevenson, had they been living at the period of distribution. Of the children of the testator the eldest son, Dr. Henry Stevenson, was the child of a former wife; all the rest being children of the testator's widow. It was claimed by the heirs of Dr. Henry Stevenson (also now deceased) that the shares of the two children of the testator, who had died intestate and without issue in the widow's life-time, and before the period fixed for the sale of the mansion house, had descended from them, as real estate, to all their surviving brothers and sisters, including the eldest brother of the half blood, he being of the blood of the common ancestor, from whom the estate was derived. On the other hand, it was claimed that the direction for sale

worked an equitable conversion of the premises in the life-
time of the widow, so that the shares of the deceased chil-
dren passed, as personal estate, to their executors or ad-
ministrators.

Accompanying the petition of the executor for instruc-
tions, there were filed concurrent petitions of all the par-
ties interested, submitting to the decree of Chancellor their
rights in the premises.

*W. H. Rogers,* for the representatives of Henry Stevenson.

To effect an equitable conversion, the will must direct
a sale absolutely, without any qualification, irrespective of
all contingencies and not subject to any discretion. *Leigh
& Dalzell on Conv.* 15; *Newl. on Cont.* 54; 2 *Kent Com.* 230
(*n*); 2 *Sto. Eq. Jur.* 1214; *Wheldale vs. Partridge,* 5 *Ves. Jr.*
388, 8 *Ves. Jr.* 227; *Wright vs. Trustees of M. E. Church,*
1 *Hoff. N. Y. Rep.* 203; *Clay vs. Hart,* 7 *Dana's Rep.* 11;
*Henry vs. McCloskey,* 9 *Watts Rep.* 145; *Negley's appeal,* 1
*Harris' Rep.* 260; *Blight vs. Bank,* 10 *Barr's Rep.* 131. A
mere *power* to sell or purchase does not change the nature
of property or the course of its descent. 1 *Jarm. on
Wills,* 529.

The present case, even giving to the testator's expressed
desire the force of a direction, is at most but a power, and
its exercise subject to contingencies. During the life-time
of the widow the sale was contingent upon her desire; and
after her death it depended upon the discretion of the
Chancellor. Until this discretion was exercised there could
be no conversion. Meanwhile, by the death of the two
children their shares descended as real estate. 9 *Watts.
R.* 1 45.

*D. M. Bates,* for the other parties interested.

It is settled that a testator's expressed desire is a direc-

tion. It was, evidently, not the testator's intention to make the fact of sale, whether or not it should be made at all, contingent upon the Chancellor's approval, but only to require his supervision and judgment with respect to the time and terms, as a security against a sale being made at an improper time or for an inadequate price. The purpose of the testator to sell was positive, and the direction in that respect unqualified. This brings the case within the established doctrine of equitable conversion. *Williams on Ex'rs.* 551. The rule is fully discussed in *Fletcher vs. Ashburner*, 1 *Bro. Ch. Rep.* 497.

THE CHANCELLOR, after holding the case under consideration, expressed the opinion that the direction for sale was sufficiently unqualified to work an equitable conversion of the fund from the death of the testator; and its distribution was decreed accordingly.