Where a testator directed the executors to sell all or any part of his estate, real or personal, at the best prices obtainable, and upon such terms as they deemed expedient, and after a legacy to his wife devised and bequeathed the residue of the estate in equal shares to his three children, but directed the shares of two who were infants to be invested as soon after his decease as practicable, in certain bonds, one-third of the lands passed under the will to the eldest child, unimpaired by any language therein and only affected by the power of sale, the conduct of which was not within the jurisdiction of the surrogate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1579–1581; Dec. Dig. § 672.*]

2. WILLS (§ 672*)—CONSTRUCTION—CREATION OF TRUST.

Where a will directed the executors to sell testator's estate, and bequeathed the residue in equal shares to his three children, but directed the shares of the two who were infants to be invested in bonds of the United States, or of the state or city, and held in trust for them until they became of age, the interest to be used for their support, maintenance, and education during minority, there was an implied devise in trust of the two-thirds of the land for the benefit of the two minor children, to invest and collect income and apply it as directed by the will, and such property vested in the trustee, and she must be charged therefor on her accounting at the sum fixed by her as its value in a former account.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1579–1581; Dec. Dig. § 672.*]

3. CONVERSION (§ 15*)—EFFECT OF PROVISIONS OF WILL.

Where a will directed the executors to sell and dispose of, as soon as practicable, all or any part of testator's estate, real or personal, at public or private sale, taking into consideration the direction of the will for continuance of decedent's copartnership business, the power of sale was imperative, and an equitable conversion of the real estate arose upon testator's death, without giving it all the qualities of personalty.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 28–37, 52; Dec. Dig. § 15.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Judicial settlement of the account of Mary Elizabeth Hazelton as executrix and trustee under the last will and testament of Robert C. Maxwell, deceased. Decree entered.

Alexander Thain, of New York City (William F. MacRae, of New York City, of counsel), for executrix and trustee.

Horwitz & Rosenstein, of New York City (Frederick L. Guggenheimer, of New York City, of counsel), for objectant Byrnes.

James M. Gray, of Brooklyn, special guardian, for objectant Maxwell.

KETCHAM, S. The will, in the parts thereof requiring construction, is as follows: After a provision for the continuance of the decedent's business, these words occur:

"I do further authorize, empower and direct my said executor and executrix and the survivor of them and such of them as shall qualify, for any or all of the purposes and objects of this my will to sell and dispose of as soon after my decease as practicable, taking into consideration, however, the direction and authority to continue after my decease the said copartnership business as hereinbefore provided for, at public or private sale, for the best price obtainable and upon such terms as to them, in their best judgment, shall seem most expedient, and to convey all or any part of my real and personal estate."

Then follows a legacy to the wife of $15,000, and the words as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, of every name, nature and description whatsoever and wheresoever situate, of which I may die seised or possessed, or which I may be entitled to dispose of at the time of my decease, I do hereby give, devise and bequeath unto my dearly beloved children, Mary Elizabeth Maxwell, Florence Gertrude Maxwell, and Arthur Richardson Maxwell, share and share alike, and to their heirs and assigns forever.

"Inasmuch as my daughter Florence Gertrude Maxwell and my son Arthur Richardson Maxwell are both infants, it is my will that the shares or portions hereinbefore given, devised and bequeathed to them respectively, be securely and safely invested as soon after my decease as practicable in United States bonds or bonds of city or state of New York and held in trust for them by my trustees hereinafter named until they respectively attain the age of twenty-one (21) years; the interest thereon accruing from time to time to be used during their minority for their support, maintenance and education, respectively."

The accountant insists that the provisions quoted contain an absolute devise to the three children mentioned, subject to a discretionary power of sale.

In behalf of the child Florence G., it is claimed that the power of sale was imperative, and that it wrought an equitable conversion as to all the lands of which the decedent died seised and that the executrix should, therefore, be charged on this accounting with the lands at a sum fixed by her as its value in a former account.

The land has not been sold. The two children, Florence G. and Arthur Richardson, were infants at the time of the decedent's death. One of them has since attained majority.

[1, 2] The truth seems to be between the two contentions above set forth. As to Mary Elizabeth, there is a devise of one-third of

the residue, unimpaired by any language in the will and only affected by the power of sale. As to the remaining two-thirds, there is an implied devise in trust, to invest and collect income and to apply the same to the two children during their minority. Morse v. Morse, 85 N. Y. 53, and other cases cited in Matter of Harris, 137 N. Y. Supp. 936.

[3] The power of sale was imperative, and there arose therefrom an equitable conversion at the time of the decedent's death. For all purposes to which the doctrine of equitable conversion applies, the lands are to be regarded as having the qualities of personalty at all times since the death. But from this the objectants would argue that the executrix should account, not for the real estate, but for an amount of money equal to her own appraisal, made in 1906, as if she had received actual cash. This claim is made upon the theory that she has neglected to exercise the mandatory power of sale.

An undivided two-thirds of the land vested in the trustee, and is part of the fund for which as such she must account. The estimate formerly made is a serviceable, though obviously temporary, basis for ascertaining the sum with which the trustee should be charged, and she should, therefore, be debited with the land at a value of $18,333.33. But this charge is made without reference to the power of sale, and only because she holds the legal title to two-thirds of the real estate.

The discussion now to follow refers only to the remaining one-third. As to this portion, the accountant has never had it, for it was not devised to her; nor has she ever had its proceeds, its value, or its equivalent, for it has not been sold. All that she has received or is chargeable with is the power, which cannot be charged against her in this proceeding, nor is it capable of admeasurement in money. Her conduct with respect to that power is not within the jurisdiction of this court. Those concerned in its execution may resort to a court of general equity powers to enforce its exercise, and, except for appeal to this court for removal of the accountant, there is no other method of vindicating their rights under the power.

It is asserted in the objectant's brief that "the real property belonging to the decedent at the time of his death was, by the terms of his will, converted into personalty [and] passed to the executrix as cash," and, again, that "the property did not vest as real property in anybody." This ignores the staring truth that lands do vest, and that, if subject to a power contained in the will, the lands of a decedent must descend to heirs or pass to devisees subject to the execution of the power. Morse v. Morse, supra; Lent v. Howard, 89 N. Y. 169.

The fiction of equity cannot operate physically upon the lands, nor can it affect the proceeds until they are physically produced. The utmost that can be derived from the authorities with respect to equitable conversion is that the doctrine has no origin or application, except in the necessity of readjusting the devolution of

real property by the rules relative to personalty, that the doctrine
has no office or room for operation until there are proceeds which,.
whether derived from sale or collection of rents, have taken the
form of actual personalty, and that the doctrine has never served
to reduce unsold lands to the impossible processes of administra--
tion, disposition or division as money.

Words are quoted from Morse v. Morse, supra, to support the
claim that this accountant should answer in money for an amount
equal to one-third of the value of this land. That was not a case
of a power of sale, nor does it contain any teaching as to the na-
ture or the disposition of the proceeds of real estate, if sold under
a naked power of sale free from a testamentary trust. That case
was determined solely upon the ground that, although there was
in form an absolute devise to persons named, there was an implied
trust, and, therefore, a devise in trust to executors to sell for the
purpose of paying the proceeds of sale to the persons designated.
To this result the power of sale in the will contributed only as an
incident. The court said, in language which definitely condemns
the claim now under discussion:

"Authority given to an executor to, sell lands, unless accompanied with a
right to receive the rents and profits, vests no estate in the executor; but
the lands descend to the heirs or pass to the devisees of the testator, subject.
to the execution of the power" (citing cases).

The court then added:

"But the power of sale conferred upon the executor by the will of Stephen
Morse is accompanied with an authority to rent and lease the land, until the
power should be exercised."

Plainly, had the court not found a trust, the lands would have
passed by a clear devise, and the devisees would have owned them
subject to the execution of the power. The case intimates no
basis for the contention that the executrix at bar should be charged
as if she had received the value of the land in money. There the
executors were held to have title to the land only as devisees in
trust, and the doctrine of equitable conversion was considered only
so far as it showed that the trust was in part to pay legacies in
money.

In Fisher v. Banta, 66 N. Y. 468, and in Matter of Russell, 59
App. Div. 242, 69 N. Y. Supp. 563, the sole question arose only
after actual conversion, and it was held that the proceeds were to
devolve upon legal representatives as personalty, and not upon
heirs as real estate.

The present case is controlled by Matter of Hunter, 3 Redf. Sur.
175, in which the same claim upon substantially similar facts was
denied. The decree should be settled accordingly.

Decreed accordingly.