William H. Blackstone,

*vs.*

Lilburne Chandler, personally, as Executor and Trustee of the Last Will and Testament of Mary Francis Calhoun, deceased, and as Executor of Julia A. Newton, deceased, and Layton Home For Aged Colored Persons, a corporation of the State of Delaware.

*New Castle, July* 15, 1925.

*Julian C. Walker and George C. Hering, Jr.*, for complainant.
*Leonard E. Wales*, for defendants.

THE CHANCELLOR. The language of the will is quoted in the preceding statement. The Sarah Ann White Home was an existing corporation at the time the will was made, and at the death of the testatrix on June 17, 1915. Its charter expired by limitation on May 3, 1916. The life beneficiary died eight years thereafter, to-wit, on May 4, 1924.

The complainant as the only heir at law of the testatrix claims to be entitled to the full sum of money now held by the defendant trustee on the ground that the legacy to the Sarah Ann White Home was not a vested one, but was contingent upon the corporation's being in existence, capable of taking upon the happening of the future event of the death of the life beneficiary, and that its charter having expired eight years prior to that event and its corporate existence thereby terminated, the legacy, for want of a legatee to receive it, lapsed and belongs to the complainant as the sole heir at law and distributee of the testatrix.

On the other hand, the defendant Layton Home for Aged Colored Persons, claims that the bequest was of a vested interest

to the Sarah Ann White Home, which was in existence at the time the will took effect, and that by virtue of proceedings by which the Sarah Ann White Home became merged with the Layton Home all the property rights of the former were transferred by law to the latter, which is now entitled to the same as successor in interest.

The first question to be determined, therefore, is—Did the bequest to the Sarah Ann White Home vest in the legatee upon the death of the testatrix with payment postponed, or was the vesting postponed and made contingent upon the existence in being of the legatee at the time of the death of the sister?

In *Conwell's Adm'r. v. Heavilo's Adm'r.*, 5 *Har.* 296, the following is stated as a general rule:

"When a legacy is directed to be paid at a future time, or on a future event, it is vested or contingent, according to the intent and meaning of the testator as expressed in his will. If the time or event is annexed to the payment of the legacy, it is vested; if to the substance or gift of the legacy, it is contingent; because such appears to be the intention of the testator. Therefore, if a legacy be given to a person, payable, or to be paid, at, or when he shall attain the age of twenty-one years; or at or upon any other definite period or event; the legacy becomes vested immediately on the testator's death; and is transmissible to the executors or administrators of the legatee, although he dies before the time of payment. But if the words 'payable' or 'to be paid' are omitted, and the legacy is given at twenty-one; or at or upon any other future period or event; the interest is contingent, and depends for its vesting on the legatee being alive at the period or event specified."

It is sometimes stated as a general rule also that if there is no gift but by direction to trustees to pay at a future time, the legacy will not vest in the beneficiary until the time for payment arrives. This is the rule relied upon by the complainant here. Though the bequest was of the entire interest in the proceeds of the real estate to the executor in trust for the beneficiaries, yet, it is contended, there was no gift to the Sarah Ann White Home except by a direction to pay at a future time. This being so, the rule just referred to is relied on as giving a contingent rather than a vested character to the legacy in question. But conceding the general rule thus relied on as a settled one, which for the present purpose we may without noting its various refinements which at times are finely drawn, there is one well defined exception to its application which is controlling in the instant case. It is this: That where the postpone-

ment of payment is for the convenience of the estate, as to let in an intermediate estate, the ultimate interest is regarded as in the nature of a vested remainder. The exception is illustrated in this State where, in a case which is not distinguishable from this one, the Chancellor held that the interest given to the children under the following testamentary provision was a vested one:

"I also devise and bequeath to my wife Margaret Journey, my farm, situated in Christiana Hundred, and known as 'Oak Hill,' for and during the natural term of her life, and at her death, I desire said farm to be sold and the proceeds divided equally among my children, share and share alike."

He observed that—

"It (the interest of each legatee) was vested in interest, but not in possession. It was a present gift, the time for the enjoyment of which was deferred until the death of the tenant for life. The intervening life estate in the land only operated as a postponement of the time for the payment of the legacy. The uncertainty or contingency was, therefore, annexed to the period for payment only, and not to the *corpus* of the gift." *In re Journey's Estate*, 7 *Del. Ch.* 1, 44 *A.* 795.

The circumstance that in the cited case the children constituted a class, whereas here the ultimate beneficiary was a single person, cannot have the effect of distinguishing it on the point now under consideration. *Jarman* at star page 736, *Volume* 1, of his work on *Wills* (*6th Am. Ed.*) and *Roper* at star pages 557 and 582 of his work on *Legacies*, recognize the rule to be that (quoting the latter)—

"Even though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such payment or distribution appear to be postponed for the convenience of the fund or property, the vesting will not be deferred until the period in question."

See, also, the following Delaware cases where, though the point was not debated, this rule appears to have been applied. *In re Nelson's Estate*, 9 *Del. Ch.* 1, 74 *A.* 851; *Fisher v. Barcus*, 14 *Del. Ch.* 324, 127 *A.* 53.

The present bequest was such as to fall within this rule. The land which was directed to be sold is to be regarded as personalty. *In re Estate of Stevenson*, 2 *Del. Ch.* 197. *In re Journey's Estate, supra; In re Nelson's Estate, supra; Fisher v. Barcus, supra.* There was a gift to the executor in trust of the entire interest in the pro-

ceeds. The trust was for the purpose of providing for the sister for life and preserving the fund intact for final availability to the Sarah Ann White Home. The interposition of the life estate made necessary the postponement of simply the payment, and nothing else, of the principal to the ultimate beneficiary. There is nothing in the will to indicate that futurity was provided for any purpose whatever other than to serve the plan of intermediate benefit to the surviving sister. If the testatrix had sought for language to express in precise and exact terms the idea of a present gift of a present interest to the Sarah Ann White Home, she would, if a trust was desired by her to safeguard the fund during the interval of her sister's life, have been driven to considerable circumlocution to do so if such language as she did use is to be regarded as indicative of a contigent rather than a present interest. The future event, viz., the sister's death, being only for the convenience of the estate and for the purpose of marking the point in time when possession should end for the first beneficiary and begin for the other, it follows that a present vested interest was intended to be bequeathed to both.

The only case which has been cited to the contrary which would appear to lead to a different result is the case of *Wright v. Wright*, 225 *N. Y.* 329, 122 *N. E.* 213, decided by the Court of Appeals in 1919. In that case there was a direction to trustees to divide the residuary estate into three parts. As to one of these parts there was no gift to the trustees as here, but simply a direction to hold the same for the use of a sister during her life and "after her death * * * to pay and deliver (out of the third) to the Washington Heights Library, in the city of New York, upon the condition that it shall be maintained at all times as a free circulating library, the sum of one hundred thousand dollars." The Court of Appeals in construing this language said that it was "the simple case, free from complications, where there is no gift but by direction to trustees to pay at a future time, and in such case it is perfectly well settled that the legacy will not vest in the beneficiary until the time for payment arrives." The Washington Heights Library having by reason of merger proceedings ceased to exist after the death of the testator but before the death of the sister, the legacy to it was held to have lapsed. This case is strongly

relied on by the complainant here. If regard is had solely to the language of the opinion reported in the case, it does appear to support the complainant's contention. The language of the opinion, however, while recognizing and basing the result on the rule just quoted, takes no account of the exception thereto which is hereinbefore pointed out and which the Court of Appeals, by its affirmance on opinion in the case of *Matter of Embree* (9 *App. Div.* 602, 41 *N. Y. S.* 737, and 154 *N. Y.* 778, 49 *N. E.* 1096), had before recognized. The case of *Wright v. Wright, supra,* might well have been decided on the ground that inasmuch as the Washington Heights Library had by its own act ceased to exist, the condition on which the bequest to it was expressly based had been violated. That the gift was a conditional one was noted by the Appellate Division of the Supreme Court in the later case of *United States Trust Co. v. Taylor,* 193 *App. Div.* 153, 183 *N. Y. S.* 426, where it was said that *Wright v. Wright, supra,* had not overruled the *Embree Case, supra,* because of the conditional feature of the bequest in *Wright v. Wright.* The surrogate's court in the case of *In re Trevor's Will,* reported in 197 *N. Y. S.* 719 (120 *Misc. Rep.* 22), and decided in 1923, citing cases from the Court of Appeals for its authority, announces the rule to be to the effect as stated hereinabove, viz., that "where the postponement of the transfer or payment to the beneficiary is for the purpose of letting in an intermediate estate (for instance, the widow's life estate held in trust)" we have one of the principal exceptions to the general rule that if "there is no present gift, but a direction to trustees to pay or divide at a future time, the vesting in the beneficiary will not take place until that time arrives." In view of the peculiar provisions of the will in *Wright v. Wright, supra,* and the apparent weight of authority in other New York decisions in conflict with the language of the opinion of the court in that case, it would seem that this language must be narrowed in its application to the particular testamentary expression before the court and not accorded recognition as a general rule of construction for cases where such particular language is absent.

The other cases cited under this head do not call for extended discussion. *Gladding v. St. Matthew's Church,* 25 *R. I.* 628, 57 *A.* 860, 65 *L. R. A.* 225, 105 *Am. St. Rep.* 904, 1 *Ann. Cas.* 537; *Crum v.*

*Bliss*, 47 *Conn.* 592; and *McBride v. Murphy*, 14 *Del. Ch.* 242, 124 *A*. 798, affirmed on appeal, 14 *Del. Ch.* 457, 130 *A*. 281, are all cases where a corporation beneficiary had ceased to exist before the testator died. *King v. Crawford*, 17 *Serg. & R.* (*Pa.*) 118, and *McClain v. Capper*, 98 *Iowa*, 145, 67 *N. W.* 102, are distinguishable on the language of the wills involved in them.

The conclusion upon the first and principal point is that the Sarah Ann White Home took a vested interest in the legacy.

This being so, what is the result? It is contended that the Sarah Ann White Home and the defendant, the Layton Home, merged in 1915, the merged corporation retaining the name of the latter, and that by reason of the merger the property, etc., of the former became the property, etc., of the latter by virtue of *Section 1974, Revised Code* 1915. The legacy in question therefore belongs, it is contended, to the Layton Home. If there was such a merger, it was not in accordance with the act authorizing it. All that was done towards the so-called merger was for the directors of the two homes to meet together and resolve upon a merger, and thereafter the Sarah Ann White Home sold its real estate and moved its physical personal property and its inmates to the Layton Home. It then ceased to function and its charter expired by limitation soon thereafter. It is conceded that the steps required by *Section* 59 of the *General Corporation Law* (*Revised Code* 1915, § 1973) were never taken. It is contended however that there was a merger *de facto*. Accepting in full the parol testimony offered to support this contention (the admission of some of which as evidence is doubtful), it does not support the contention. Assuming that there may be a merger *de facto* of two corporations, yet the rule as to colorable compliance which is applicable to the existence of a corporation *de facto* (*Read v. Tidewater Coal Exchange, Inc.*, 13 *Del. Ch.* 195, 116 *A*. 898) ought likewise to prevail as to *de facto* mergers. There was no colorable compliance with the statutory provision and no merger took place when the so-called attempt was made in 1915.

The interest which the Sarah Ann White Home had in the legacy was therefore a property right which continued in it at the termination of its existence in 1916. Its ultimate destination was the same as that of any other property interests. What would have become of it, had the proceedings now about to be men-

tioned not been resorted to, need not be considered. Because of these subsequent proceedings, it seems clear that the legacy belongs to the Layton Home.

The proceedings referred to are as follows: After the bill was filed, the Sarah Ann White Home took the necessary steps to renew and revive its corporate existence. The legality of these proceedings is conceded. Upon such restoration the revived corporation was, by the act under which the revival was authorized, restored to all its property rights. The right to the legacy therefore which had never been disposed of in the course of winding up its affairs, was restored to the corporation. Having thus been revived, it proceeded by steps which are conceded to have been regular to effect a merger with the Layton Home and thus accomplished in lawful manner what is claimed to have been previously attempted. Upon the lawful merger thus regularly effected, its property, etc., as before noted, belongs to the merged corporation known as the Layton Home for Aged Colored Persons, the defendant herein.

The prayer of the bill is that the defendant, Lilburne Chandler, personally, as executor and trustee account to the complainant as heir at law; that he pay to the complainant the sum found due on such accounting; and that the said Layton Home be decreed to have no right, title or interest in or to the estate of the testatrix. There is no cross bill praying relief. The decree, therefore, will be for a dismissal of the bill.

Let a decree be prepared accordingly.