## Lowe's Estate.

Argued March 30, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Theodore H. Schmidt,* for appellant No. 88.

*Thomas L. Kane,* for appellant No. 79, and appellee No. 88.

*Ernest Frey,* with him *R. A. & James Balph,* for appellee No. 79.

OPINION BY MR. JUSTICE STERN, May 27, 1937:

Mary E. Lowe died January 26, 1934, leaving a son, Harold C. Lowe, and a minor grandson, James Horrocks Lowe. The genuineness and validity of her will, dated January 13, 1934, were contested by the son, but it was sustained, on appeal to this court, in 318 Pa. 497. It provided, after relatively unimportant devises and bequests, that the residue should vest in Fidelity Trust Company in trust to allow one-third part of the net income to accumulate until the grandson reached the age of thirty years, and thereafter to pay the one-third part of the net income, together with the net income thereafter accruing from the accumulations, to the grandson for the remainder of his life. The remaining two-thirds of the net income was to be allowed to accumulate for a period of two years after the death of testatrix, and thereafter the trustee was to pay the two-thirds part of the net income, together with the net income thereafter accruing from the accumulations, to the son during the rest of his life. All income payable to the son and grandson was to be free and clear of their debts and obligations. After the death of both of them, the net income from the estate was to be allowed to accumulate for two years, and then the principal of the estate, including the accumulations of the thirty-year period and both of the two-year periods, was to be given to The Odd Fellows Home for the Aged and In-

firm of Pennsylvania, located at Grove City, Mercer County, as a memorial to the parents of testatrix. There were provisions for a substitutionary disposal of the principal in case the Odd Fellows Home should not be in existence at the time it was to receive the bequest.

At the audit of the executor's account the son, Harold C. Lowe, claimed the entire residuary trust estate on the ground that the bequest to the Odd Fellows Home was for charitable uses and void because of the death of testatrix within thirty days after execution of her will, and that the life estates also fell because they were an integral and inseparable part of the general scheme of disposition of the estate. The auditing judge sustained this claim. Exceptions were filed by the Odd Fellows Home to the finding that it was a charity; by the trustee, claiming that even if the gift for charity failed the life estates were not affected; and by Harold C. Lowe, objecting to an allowance to the executor of a credit for counsel fees, a part of which was for services in the contest for an issue devisavit vel non. The court in banc affirmed the ruling that the Odd Fellows Home was a charity, held the accumulations of income to be illegal, decided that the remainder vested in the son, Harold C. Lowe, as heir at law and next of kin, sustained the trustee's contention that the spendthrift trusts did not fall with the gift to the Home, dismissed the exceptions to the allowance of the counsel fees, distributed to the son, Harold C. Lowe, "all the income from the whole of the principal of the trust estate from the date of his mother's death until his son James Horrocks Lowe attains the age of thirty years, if he shall so long live," and awarded the corpus of the residuary estate to Fidelity Trust Company, trustee, in trust for the purposes specified in the will. From this decree two appeals have been taken, one by the Odd Fellows Home, and one by Harold C. Lowe.

The first question for consideration is whether the gift to the Odd Fellows Home was properly held by the

court below to be for charitable uses. According to the charter of the Home, as amended in 1918, its purpose was to establish a "Home for Aged and Infirm Members of the Independent Order of Odd Fellows, their Wives and the Indigent and Aged Widows of deceased Members of the Order, and all such as the By-Laws may provide." The by-laws provide that an Odd Fellow, in order to be admitted to the Home, must be sixty years of age or over, of good moral character, and unable to support himself by reason of age or indigence; he must have been a contributing member of his lodge for at least five consecutive years next preceding his application. Qualifications are also prescribed for wives and widows applying for admission. An Admission Committee receives applications, investigates them, and refers them, with its recommendations, to a "Committee on Homes and Kindred Charities of the Grand Lodge;" if approved by that committee, the applicant is received by the Home as a resident. In addition to such donations and bequests as may be made to it (and which are solicited in its publications), the Home is supported by annual payments made by the subordinate lodges on assessments levied by the Grand Lodge and based upon the number of members in each lodge. The payments by the subordinate lodges are made from the dues paid in by their members.

Neither in the charter of the Home nor in its constitution or by-laws is there any provision giving a lodge member a contractual right to become a resident. No one who lacks the enumerated qualifications can enter the Home, but, on the other hand, the mere possession of those qualifications gives no assurance of acceptance. While it is not to be presumed that the Committee on Homes and Kindred Charities acts arbitrarily or capriciously in passing upon applications, even were it to do so a rejected applicant would have no rights that he could enforce in an appeal to a judicial tribunal.

In determining whether, under these circumstances, the Odd Fellows Home is a charity, it must be kept in mind that it is distinct from the lodges and from the Order of Odd Fellows; moreover, the question is not as to its being a *public* charity entitled to exemption from taxation, but whether a bequest to it is one for "charitable uses" within the meaning of the Wills Act of 1917, P. L. 403, section 6 (amended in respects here immaterial by the Act of July 2, 1935, P. L. 573).

In the organization under consideration in *Swift's Executors v. Easton Beneficial Society*, 73 Pa. 362, the members were entitled under the by-laws to specified sickness and death benefits. It was held that a bequest to the society was not for a charitable use because its "benevolence is strictly a matter of contract, and may be enforced in a court of justice. . . . Its benevolence begins and ends at home."

So in *Sharp's Estate*, 71 Pa. Superior Ct. 34, the "Old Men's Home of Odd Fellows" and the "Rebekah Home of Odd Fellows"—the latter being a corporation organized to support and maintain the widows and wives of indigent Odd Fellows—were held not to be charities, because "An applicant for charity is a suppliant, not one who asserts a right." The court was of opinion that according to the record there presented there was a contractual right to membership, saying, in the case of the Rebekah Home: "The privilege of admission into the home and support therein is bought and paid for, and is a legal right, subject to the rules and regulations prescribed by the by-laws."

On the other hand, in the leading case of *Philadelphia v. Masonic Home of Pennsylvania*, 160 Pa. 572, it was held that a Masonic Home was not a *purely public* charity, being open only to Masons, but that it *was* a charity. The home there was for indigent, afflicted or aged Freemasons, and for the destitute widows and orphans of Freemasons in the State of Pennsylvania, and inmates were admitted only after approval of a

committee on admissions. And in *Ralston's Estate,* 290 Pa. 374, while no decision was rendered as to whether the two institutions there involved, the Masonic Home at Elizabethtown and the Odd Fellows' Orphans Home near Sunbury, were charities, it was pointed out that in both the applicant's admission was determined by a committee whose decision was final, and the applicant did not have any absolute rights. Similarly in *Channon's Estate,* 266 Pa. 417, 425, dealing with an Odd Fellows' Home, it was said that whatever might be the right of a subordinate lodge to place a certain number of its members in the home, "no individual member of a lodge or encampment has a right of entrance, contractual or otherwise, or even a certainty of acquiring such right. . . . When Moore witnessed the will, he had no legal right to enter the home, or even to apply for entrance, but simply belonged to a class, as one of which, eleven years hence, if he possessed certain other qualifications, and his lodge selected him as its nominee for the place, he might be entitled to enter the institution. That is to say, he did not possess, but simply had the capacity of attaining, the legal right to share in the benefits of the home."

The fact that the applicant, when he enters, is compelled to turn over his property to the home is not such a circumstance as changes his admission from the domain of charity to that of contract. As was said in *Brooks v. Hastings,* 192 Pa. 378, 388, "It is the creation of a condition upon which charitable support may be obtained under a contract which is voluntarily made, providing for the contribution of something towards the maintenance of the institution which furnishes the support."

Since an applicant for admission to the Odd Fellows Home in the present case has no legally enforceable right to enter, we are of opinion that the court below was right in holding that the bequest to the Home was for a charitable use, and therefore void because of the

death of testatrix within the statutory period. It may be added, while not of controlling import, that the Home has never paid local taxes on its real estate, but has been considered exempt, presumably as a public charity.

The bequest to the Home falling, the principal of the trust fund goes to Harold C. Lowe as the heir and next of kin of testatrix. The court below properly held, however, that this did not affect the spendthrift life estates of the son and grandson, nor merge the son's interest in the income with the interest in the remainder thus obtained by him. This is not one of the line of cases* in which a testator, in contravention of the law against perpetuities, provides for a gift to remote descendants and in the interim for life estates intended merely to serve a dominant purpose of deferring the ultimate vesting of the estate. In such instances the courts have declared, as in *Lilley's Estate,* 272 Pa. 143, 153, that "where the provisions creating the particular estate in trust are inseparable and dependent parts of the testator's main scheme to tie up his residuary estate in the ultimate gift, and thereby prevent the vesting until a date too remote, such provisions, including all the agencies or means designed to accomplish the desired and forbidden end, are void under the rule. . . . Where the limitations of the prior and ulterior estates are so intimately and inseparably intertwined that the failure of the limitation of the latter disturbs the main and dominant purpose of the testator, of which the prior limitations are a part, such prior and ulterior estates are void. . . ." The present is not a case involving an illegal testamentary scheme of ultimate disposition to which bequests of prior estates are wholly incidental; here the gift to the charity, lawful in itself, succumbs only because of the premature death of testatrix. "The life

---

* *Johnston's Estate,* 185 Pa. 179; *Kountz's Estate,* 213 Pa. 390; *Lilley's Estate,* 272 Pa. 143; *Ledwith v. Hurst,* 284 Pa. 94; *Feeney's Estate,* 293 Pa. 273.

estates were not created for an unlawful purpose, nor to carry out an illegal scheme. The provision for the charity was not illegal. The particular estates and the remainder were carved out of the same fund or property, and were distinct and independent of each other": *Anderson's Estate,* 243 Pa. 34, 40. In *Moore's Estate,* 198 Pa. 611, and in *Moore v. Deyo,* 212 Pa. 102, a testator created spendthrift trusts in favor of his children for life with remainder to charities. The charitable bequests fell by reason of the testator's death within the calendar month. It was held that the children took the remainder under the intestate laws, but the spendthrift life estates remained in full operation and were not merged in the fee thus acquired, the court saying in *Moore's Estate,* p. 613, that "Here the paramount purpose of the testator was not to effect an illegal scheme, but to provide for and protect his children—the limitation to charities being in no way dependent upon or sought to be accomplished through the agency of the prior gifts. There was no 'scheme' whatever. The creation of the charities was perfectly lawful when the will was executed. It only failed because of the death of the testator within the time required by statute, and it is only to the extent of the charitable dispositions that the act affects the provisions of the will." These authorities govern the present case.

The accumulations directed by the will are void. This is true even as to those covering the period of the grandson's minority, because accumulations during minority are prohibited unless they are for the benefit of the minor and not of another legatee or beneficiary: *Washington's Estate,* 75 Pa. 102; *Wright's Estate,* 227 Pa. 69, 75. Here, these accumulations were to go, not to the minor, but to the Odd Fellows Home; the minor was to receive only the income from the accumulations. The accumulations being illegal, the grandson is not entitled to them: *Weinmann's Estate,* 223 Pa. 508; *Wright's Estate,* 227 Pa. 69. They pass, under the law, to the resid-

uary legatee or to the heir at law, as the case may be, but since here the son, Harold C. Lowe, takes the residue of the trust and is the decedent's heir and next of kin, there can be no question that it is he who is entitled to the funds constituting the illegal accumulations, and therefore the court below properly ordered distribution of the whole income from the trust estate to Harold C. Lowe from the death of testatrix until the grandson should attain the age of thirty years.

The fees of counsel allowed by the court covered legal services rendered both in the issue devisavit vel non and in the administration of the estate, no apportionment being made. The amount of the charge is not challenged as excessive, the only objection advanced being that no allowance whatever should have been made to the executor for expenses incurred in defending the will. It is true that, generally, "an executor is not bound to defend his testator's will, but if he undertakes to do so, it must be as the agent and in the interest of those benefited by his action": *Yerkes's Appeal*, 99 Pa. 401, 409; *Sheetz's Appeal*, 100 Pa. 197; *Mumper's Appeal*, 3 W. & S. 441. Nor can counsel fees be allowed for services in seeking to uphold specific bequests in the will: *Arnold's Estate*, 252 Pa. 298. But where the executor is also a trustee, it is not only his right but his duty to defend the trust, and he may equitably demand that his reasonable costs and counsel fees be paid out of the trust estate: *Mead v. Sherwin*, 275 Pa. 146, 156. Here, the fight waged to sustain the integrity of the will was successful, and, while the son of testatrix would have gained more by having the will set aside, it was the duty of the trustee to act for *all* the trust beneficiaries. In quite similar cases counsel fees were allowed out of the trust estate: *Hoffman's Estate*, 19 Pa. Superior Ct. 70; *Waller's Estate*, 62 Pa. Superior Ct. 332. See also *Crawford's Estate*, 307 Pa. 102, 110, 111.

The decree of the court below is affirmed. Costs of the appeals to be paid out of decedent's estate.