EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Christopher L. Ward, deceased,

*vs.*

CAROLINE B. WARD, CHRISTOPHER L. WARD, JR., ESTHER WARD KIMBALL, RODMAN WARD, ALISON WARD BURDICK, CYNTHIA KIMBALL, ALISON KIMBALL, SEDGWICK A. WARD, RODMAN WARD, JR., LALOR BURDICK, CYNTHIA BURDICK, ELEANOR B. WARD and DORCAS A. WARD.

*New Castle, July 31, 1946.*

*Caleb S. Layton,* of Richards, Layton & Finger, for complainant.

*William Poole,* of Southerland, Berl & Potter, for Albert L. Massey, guardian *ad litem* for testator's minor grandchildren.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, for Caroline B. Ward, Esther Ward Kimball, Rodman Ward, Alison Ward Burdick, and Dorcas A. Ward.

HARRINGTON, Chancellor:  This is a bill to construe the last will and testament of Christopher L. Ward, deceased. Mr. Ward died testate February 20th, 1943, a resident of Pennsbury Township, Chester County, Pennsylvania, and his will was duly proved in that County and State; an exemplified copy thereof was also filed in the office of the Register of Wills, for New Castle County, Delaware. The answer of the guardian *ad litem* denied the allegation of the bill that Christopher L. Ward was a resident of the State of Pennsylvania at the time of his death, but the proof did not justify that claim and it was not strongly pressed at the argument.

The testator bequeathed and devised the residue and remainder of his real and personal property to Equitable Trust Company, the complainant, a corporation of this State, having its principal office in the City of Wilmington, on the following trusts:

"Item 2.  * * *:

"First.  To hold my residence and the land thereto appertaining, including the farm, in trust for the use and occupancy of my said wife during her lifetime or for so long a period as she may choose and desire to occupy the same, paying the taxes, insurance and necessary repairs and upkeep thereof as a first charge out of and against the income of the trust properties herein devised and bequeathed. which upkeep, however, shall not include the payment of wages to

farmers, farm hands or other workmen or employees, it being my desire that, if my wife during her lifetime or during her occupancy of said residence wishes to continue the use and occupancy of the farm adjacent to my residence, she shall pay the wages and other necessary charges and expenses and shall receive for her own use all the proceeds and products thereof; but if my said wife prefers to discontinue the use and occupancy of said farm as above set forth, then and in that event, my said trustee shall rent the farm to a suitable tenant or tenants and the income and rentals therefrom shall become and be a portion of the income of this trust estate; in which latter event, the delimitation of that portion to be rented as the farm shall be agreed upon by my said wife and my said trustee and only such portion thereof as may be so agreed upon shall be so rented as a farm. This provision allowing my said wife the use of said farm and dwelling-house shall not extend to nor include the use of the dwelling-house on the Kennett-Pike, known as the Line House, nor the cottage on said Pike adjacent to said Line House, nor the cottage on my private road. Said three buildings and the land appertaining to them (being, in case of the last mentioned cottage, one acre in extent) shall be held by said Trustee as rentable properties as hereinafter directed.

"Second. At and upon the death of my said wife or upon her sooner ceasing to occupy the said residence as her residence, then the said residence and all the farm and land thereunto appertaining (including the said Line House and cottages hereinbefore mentioned) shall be sold publicly or privately, for cash or on time, upon such terms and conditions as to my trustee shall seem best, and the proceeds thereof held and invested as a portion of this trust estate.

"The said Line House and the land appertaining thereto and the said cottages and the lands appertaining thereto shall be rented by the said trustee and the income thereof shall become a part of the income of this trust estate but, if in the discretion of my trustees it seems desirable and for the betterment of the trust estate and the income therefrom to sell said Line House and the land appertaining thereto, and/or the said cottages or either of them, and the lands appertaining thereto, then my trustees shall have the power to sell the same publicly or privately and add the proceeds thereof to the said trust estate and in any event, the said Line House property and the said cottage properties may, if for the advantage of this trust estate, be in all respects considered and treated as separate parcels both in the renting and in the sale thereof, Provided, that the said last mentioned cottage shall not be sold during my wife's occupancy of the mansion house except with her written consent.

"Third: * * *

"(1)   To retain ten per centum (10%) of the net income annually and to add this amount to the principal or corpus and to hold such addition as a part thereof under the same terms and conditions as are applicable to the original principal or corpus.   This provision shall continue in force during the life of this trust, and the words 'net income' hereinafter used shall be construed and taken to mean net income after retention of ten per centum (10%) thereof.

"(2)   The net income hereof shall be distributed in quarterly instalments as follows: two-fifths (2/5) thereof to my said wife, the balance, share and share alike, to and among my children.   If any of said children have died leaving a widow and issue surviving or a widow with no surviving issue, or issue but no surviving widow, the share of net income to which such decedent would have been entitled shall be paid to and among them as follows: to such surviving widow and issue in equal shares (issue of such decedent's deceased child taking their parent's share), or to such surviving issue, no widow surviving, in equal shares (issue of decedent's deceased child taking their parents share), or to such surviving widow, no issue surviving, one-half of the share then to be paid to my other children or to their surviving issue or surviving widow and issue.   The payments allotted by this paragraph to any widow (except my own widow) shall continue only durante viduatate, and upon re-marriage of any such widow the share of net income thereby allotted to her shall be paid to and among the surviving issue of her marriage with my son, in like manner as hereinbefore in this paragraph provided for distribution to surviving issue of my children.

"(3)   * * *

"(4)   * * *

"(5)   At and upon the happening of either of the following events, whichever may be later in time, that is to say, (a) when the youngest then living grandchild of mine shall reach the age of twenty-one (21) years or (b) twenty-one (21) years after the death of my last surviving child then Trustee shall thereupon divide, pay over and distribute the principal or corpus of this trust fund, together with all accrued and uncollected or undistributed income, discharged of all trusts, to and among the my issue, in such manner that the issue of one deceased child of mine shall receive the same amount as the issue of any other deceased child of mine, any one of the my issue taking its proportionate share of the share to which its parent would be entitled if living. There shall however be preserved in trust, durante viduatate, such proportion of the principal or corpus of this trust as shall represent the share of income payable

to any surviving wife of any son of mine, and such share of the principal or corpus shall be distributed at her death or re-marriage free of any trust and in the same proportions and to the same persons as were entitled to share in the earlier distribution of the principal or corpus under the terms of this agreement.

"(6) In the event of the failure of my issue before the termination of this trust, then the entire principal or corpus of his trust, together with all accrued and uncollected or undistributed income shall be paid over to and distributed among such persons as, by the intestate laws of the State of Delaware, as existing at the time of my death, would then be entitled to receive the same, if I had died intestate, and without leaving widow or issue, except that, if the widow of any son of mine then survive and is entitled to income under the terms of this trust, a share of the principal or corpus proportioned to the income to which she is then entitled shall remain in trust, durante viduatate, and upon her death or re-marriage such share of principal or corpus so retained shall be distributed in the same manner and to the same persons (or their legal representatives) as were entitled to distribution under the provisions of this paragraph.

"(7) The trust herein established shall in any event terminate twenty-one years after the death of the last survivor of the beneficiaries thereof, who shall be living at the date of my death; at which time,—i. e., of such last mentioned termination—the principal, discharged of all trusts, shall be delivered to those immediately theretofore entitled to the income in the same proportions of the principal as they had been immediately theretofore entitled to the income. This provision is to be construed as a part of and as a limitation upon the duration of the trust created by this will.

"Item III (1) * * * all such investments and re-investments (by the Trustee) shall be of such character as are authorized at the time by the laws of the State of Delaware for investments by Trustees provided however that a majority of the adult beneficiaries of this trust in being at the time may enlarge this power of investment by consenting in writing to any specific investment or re-investment of any part of the principal or corpus of the trust, * * *."

The testator, therefore, directs (1) that Caroline B. Ward, his widow, shall be permitted to occupy and use the family dwelling house and the land appertaining thereto, including the farm, "during her life or for so long a period as she may choose and desire to occupy the same"; (2) in the event that Mrs. Ward should prefer "to discontinue the use and occupancy" of the farm, the trustee shall rent it

and the income therefrom shall become a part of the income from the trust estate; (3) the Line House and the two cottages are not included in the devise to Mrs. Ward and are to be rented by the trustee, and the rents therefrom added to the income from the trust; (4) upon Mrs. Ward's death, or upon her sooner ceasing to occupy the testator's residence, that property and all the farm and land appertaining thereto, as well as the Line House and the two cottages, "shall be sold", and the proceeds therefrom held and invested as a part of the trust estate; (5) that the trustee, in its discretion, may sell the Line House and the two cottages prior to the termination of Mrs. Ward's rights in the other property and add the proceeds therefrom to the corpus of the trust, but during her occupancy of the Mansion House her written consent is necessary to the sale of, at least, one of the cottages; (6) during the life of the trust, the trustee shall retain 10% of the net income therefrom and add it to the principal fund, and shall hold such additions as a part thereof, under the same terms and conditions applicable to the original principal or corpus; (7) that the net income shall be distributed and the trust shall terminate (a) when the youngest then living grandchild of the testator shall reach the age of twenty-one years or (b) after the death of the last surviving child of the testator; or, in any event, twenty-one years after the death of the last survivor of the beneficiaries who shall be living at the date of the testator's death.

Caroline B. Ward, the testator's widow, and Equitable Trust Company were named the executrix and executor of his will, but Equitable Trust Company renounced the appointment, and letters testamentary were granted to Caroline B. Ward alone. Equitable Trust Company, however, accepted the trust and substantially the entire residue of the testator's personal property has been turned over to it by the executrix, pursuant to an order of the Orphans' Court of Chester County, Pennsylvania. Under the provisions of

the will, the trustee also acquired title to the testator's real estate, both in Delaware and in Pennsylvania.

Christopher L. Ward was born in Wilmington, and for many years was one of the prominent lawyers practicing in that city, and one of Delaware's leading citizens. For some years prior to his death he devoted the greater part of his time to the affairs of Corporation Service Company, which maintained offices in the Delaware Trust Building in Wilmington, but never entirely severed his connection with the law. On several occasions during that period he served as a master in important cases pending in this court; the last time after 1938. Mr. Ward resided in Wilmington until about 1921. Wishing to live in the country he then purchased a substantial tract of land on the northerly side of the Kennett Pike, near Wilmington, on the border between Delaware and Pennsylvania and built a house there, in which he resided for the remainder of his life.

A part of that land is in each State, but the main dwelling house is in Pennsylvania, though only about fifteen feet from the Delaware line. The two cottages, referred to in the will, are in Delaware. The Line House property, however, is partly in Delaware and partly in Pennsylvania. After Mr. Ward moved to the farm he no longer paid income taxes to the State of Delaware, and voted in Pennsylvania. At the time of his death he was occupying one of the Delaware cottages, but that was a mere temporary occupancy because of his inability to secure sufficient oil to heat the Mansion House. Though Mr. Ward lived in Pennslyvania practically all of his public, extensive business and social activities continued to be in the State of Delaware. The securities acquired by the trustee under his will, which composed a large part of the residue of his personal property, were kept by Mr. Ward in the vaults of the Delaware Trust Company in Wilmington. Until shortly before his death he was the president of the Delaware Historical Society and during recent years, by appointment of the Governor of Delaware, served on several State Commis-

sions, including the Portrait Commission and the Swedish Tercentenary Commission. His will was executed in Delaware in 1935, and he described himself therein as a resident "of Christiana Hundred, New Castle County, State of Delaware." He directed that under certain circumstances the corpus of the trust, together with all accrued and uncollected income thereon, should be distributed in accordance with "the intestate laws of the State of Delaware"; the powers of the trustee in making investments were primarily regulated by the laws of this State and could be enlarged only by the written consent of all of the adult beneficiaries.

The Mansion House and a part of the farm land appertaining thereto, located in Chester County, Pennsylvania, are now occupied and used by Caroline B. Ward.

Under the facts, conflict of law principles are involved. The questions are:

(1) Whether the essential validity of a trust of personal property is governed by the law of Pennsylvania, where the testator resided at the time of his death, or by the law of Delaware;

(2) Even if the administration of that part of the trust consisting of personal property is to be governed by the law of Delaware, what law governs the validity of the provision directing the accumulation of income from the Pennsylvania real property; and

(3) Where must the trustee account for the administration of the trust?

A statute of the State of Pennsylvania, Act April 18, 1853, *P.L.* 507, § 9, 20 *Purdon's Stat.* § 3251, prohibits the accumulation of income for a period in excess of twenty-one years from the death of a testator, and then only for the benefit of minors who, except for such accumulation provision, would be entitled to receive said income. It does not, however, strike down any such provisions entirely, but merely prohibits the accumulation of income beyond the per-

mitted statutory period. See *In re Washington's Estate,* 75 *Pa.* 102; *In re Wright's Estate,* 227 *Pa.* 69, 75 *A.* 1026; *In re Lowe's Estate,* 326 *Pa.* 375, 192 *A.* 405, 111 *A.L.R.* 518. The accumulation provision of the testator's will violates that statute but, as we shall hereafter see, there is no similar statutory provision in the State of Delaware. Moreover, the facts clearly show that a Delaware trust was intended. In *Wilmington Trust Company v. Wilmington Trust Company,* 26 *Del.Ch.* 397, 406, 24 *A.2d* 309, 312, the Supreme Court pointed out that while the domicile of the donor is a circumstance to be considered in determining the seat of a trust, it is no longer regarded as the decisive factor. The court also said:

"The domicile of the trustee and the place of administration of the trusts—quite generally the same place—are important factors; and the intent of the donor, if that can be ascertained, has been increasingly emphasized."

In *Wilmington Trust Company v. Wilmington Trust Company,* 25 *Del.Ch.* 121, 15 *A.2d* 153, the appointment of a trust company in another State as trustee was also emphasized.

Those statements are equally applicable in determining the situs of a testamentary trust. See *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903. In connection with other facts, it seems the fact that the testator described himself in his will as a resident "of Christiana Hundred, New Castle County, State of Delaware" has also been regarded as of some importance in determining the intended situs of the trust. See *In re Chappell's Estate,* 124 *Wash.* 128, 213 *P.* 684.

The formal validity of a will disposing of personal property, is always governed by the law of the testator's domicile at the time of his death. *Hope v. Brewer,* 136 *N.Y.* 126, 32 *N.E.* 558, 18 *L.R.A.* 458; *Lindsay v. Wilson,* 103 *Md.* 252, 63 *A.* 566, 2 *L.R.A.,* (*N.S.*) 415. Unless a contrary intent appears, the essential validity of a bequest of personal

property, whether in trust or otherwise, is governed by the same rule. *Wilmington Trust Co. v. Wilmington Trust Co.,* 26 *Del.Ch.* 397, 24 *A.2d* 309; *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903; 4 *Page on Wills* (*L.T.Ed.*) 722, 744; *Land, Trusts Conf. Laws* 56, 71. But if a person creates a testamentary trust of personal property to be held and administered in another state, where it is valid, the fact that its provisions are contrary to the general policy of the testator's domicile is usually unimportant in determining the validity of the gift and the conditions imposed. *State, for Use of Woodlands Cemetery Co. v. Lodge,* 2 *Terry* (41 *Del.*) 125, 16 *A.2d* 250; *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903; *Fordyce v. Bridges,* 2 *Phil. Ch,* 497, 41 *Eng.Rep.* 1035; *Parkhurst v. Roy,* 79 *Ont.App.* 614; *In re Chappell's Estate,* 124 *Wash.* 128, 213 *P.* 684; 4 *Page on Wills, supra,* 722, 724; *Land, Trusts Conf.Laws* §§ 17, 18, 19; *Mount v. Tuttle,* 183 *N.Y.* 358, 76 *N.E.* 873, 2 *L.R.A.* (*N.S.*) 430, 433. Ordinarily, in such cases the question of state policy is only a matter of legitimate interest in the jurisdiction in which the bequest is to be held and administered. *State, for Use of Woodlands Cemetery Co. v. Lodge, supra; Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903; *Vansant v. Roberts,* 3 *Md.* 119; *Fordyce v. Bridges, supra;* 4 *Page on Wills, supra,* 722, 724; *Land, Trusts Conf.Laws* 71. Most of the cases applying that rule involve charitable trusts, but it is not restricted to cases of that nature. *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903; *Hutchison v. Ross,* 262 *N.Y.* 381, 187 *N.E.* 65, 89 *A.L.R.* 1007; *Lanius v. Fletcher,* 100 *Tex.* 550, 101 *S.W.* 1076; *Land, supra,* § 17. Conceding that its application may sometimes depend upon the object and purpose of the law of the domicile relied on to defeat the gift (*Chamberlain v. Chamberlain,* 43 *N.Y.* 424; *Mount v. Tuttle,* 183 *N.Y.* 358, 76 *N.E.* 873, 2 *L.R.A.* (*N.S.*) 430, 433, 435; *Land, supra,* 57), a direction to accumulate income in a trust located in another State is usually valid. *Parkhurst v. Roy, supra; Manice v. Manice,* 43 *N.Y.* 303, 387; *Land, supra,* 58; *Mount v.*

*Tuttle,* 183 *N.Y.* 358, 76 *N.E.* 873, 2 *L.R.A.* (*N.S.*) 431; see also, *Fordyce v. Bridges, supra.* Ordinarily, the policy of any such general prohibitory statutory provision in the domiciliary State seems to be directed at the holding rather than the giving of the fund. *Vansant v. Roberts, supra; Land, supra,* 58. Moreover, there seems to be no reason to conclude that the Pennsylvania legislature had any different intent in prohibiting the accumulation of income under certain circumstances. See *Appeal of Fowler,* 125 *Pa.* 388, 17 *A.* 431, 11 *Am.St.Rep.* 902. In that case, the trustee was a Pennsylvania financial institution, but both the donor of the fund and the beneficiary were residents of other states, and it was held that a direction to accumulate did not violate the statute. These principles are important factors in determining the duties of the trustee in the present case."

In England, prior to the enactment of the so-called Thellusson Act in 1800 (39 & 40, *Geo.* III, *c.* 98), apparently there was no rule directly prohibiting the accumulation of funds if the beneficial interest vested within the time required by the rule against perpetuities. *Simes Fut. Int.,* § 588; 1 *Bogert on Trusts,* § 215; *Thellusson v. Woodford,* 11 *Ves. Jr.* 112. Largely because of the rule announced in *Saunders v. Vautier,* 4 *Beav.* 115, no serious practical problem was often presented in that country when there was a direction to accumulate funds. *Simes Fut. Int.,* § 588. But in this country, where *Claflin v. Claflin,* 149 *Mass.* 19, 20 *N.E.* 454, 3 *L.R.A.* 370, is usually followed (see *Lewes Trust Co. v. Smith,* 28 *Del.Ch.* 64, 37 *A.2d* 385), public policy seems to dictate some limit to the time the accumulation of wealth in a trust will be permitted. *Simes Fut. Int.,* § 589; 1 *Bogert on Trusts,* § 215; *Scott on Trusts,* § 62.11; *Moeller v. Kautz,* 112 *Conn.* 481, 152 *A.* 886. While it seems reasonably clear that in a private trust accumulation will not be permitted for a longer period than a life or lives in being and twenty-one years and the usual period of gestation thereafter (2 *Simes Fut. Int.,* § 589; *Scott on Trusts,* § 62.11; *Moeller v. Kautz, supra; Canda v. Canda,* (*N.J.*) 113 *A.* 503; see also,

*Lewes Trust Co. v. Smith, supra; Security Trust Co. v. Cooling,* 28 *Del.Ch.* 303, 42 *A.2d* 784), the trust created by the .testator's will does not violate that rule. He directs that a portion of the income from his personal property be accumulated during the life of the trust, but it is clear that the trust is to terminate "twenty-one years after the death of the last survivor of the beneficiaries thereof, who shall be living at the date of my death."

It is conceded that both the formal and essential validity of a devise of real property is usually governed by the law of the State within which it is located. *Lindsay v. Wilson,* 103 *Md.* 252, 63 *A.* 566, 2 *L.R.A.* (*N.S.*) 424; *Land, Trusts Conf.Laws* 1324, 1326. The law of that state also determines whether such property shall be regarded as real or personal. *Restatement Conf.Laws,* §§ 209, 244; *Beale Conf.Laws* § 209.1. It is contended (1) that the doctrine of equitable conversion is applicable, and that all of Christopher L. Ward's Pennsylvania real property must be regarded as having been converted into personalty at the time of his death, to be held and administered as such by the Delaware trustee, pursuant to the laws of this state, and (2) that the policy of the State of Pennsylvania, with respect to the accumulation of income from real property located there is, therefore, unimportant. The guardian *ad litem* also claims that, in any event, as the rents derived from any Pennsylvania real property are to be held and administered by the Delaware trustee, the Pennsylvania statute is not applicable.

A positive and unconditional direction to sell real property on the happening of some future event that must take place will usually be regarded in equity as a conversion of it into personal property at the time of the testator's death. *In re Estate of Stevenson,* 2 *Del.Ch.* 197; *Blackstone v. Chandler,* 15 *Del.Ch.* 1, 130 *A.* 34; 4 *Pomeroy Eq.Jur.,* (5th Ed.) § 1162. This rule is based on a fiction indulged in by the courts in order to carry out the presumed intention of

the testator, and on the theory that equity regards what ultimately must be done as having been done. *Eddington v. Turner*, 37 *Del.Ch.* 411, 38 *A.2d* 738, 155 *A.L.R.* 562. In the absence of a contrary intent, it is usually applied, though the testator directs that the contemplated sale shall not take place until the termination of a life interest given in the same or other property. *In re Estate of Stevenson, supra; Blackstone v. Chandler, supra.* Under such circumstances, the ultimate right to compel the performance of the express trust or duty to sell arises when the will takes effect. See *Inghram v. Chandler*, 179 *Iowa* 304, 306, 161 *N.W.* 434, *L.R.A.*1917D, 713. This fiction is often applied in determining the testator's intent with respect to the distribution of funds, as between real and personal representatives, in solving questions relating to the validity of trusts, and, perhaps, under other circumstances. *Konvalinka v. Schlegel*, 104 *N.Y.* 125, 9 *N.E.* 868, 58 *Am.Rep.* 494; *Inghram v. Chandler, supra;* 13 *C.J.* 853, 18 *C.J.S., Conversion,* § 2. But being an equitable doctrine, its application usually depends somewhat on the circumstances in which it is invoked and the result accomplished. *Lowe v. Plainfield Trust Co.*, 216 *App.Div.* 72, 215 *N.Y.S.* 50; 3 *Pom.Eq.Jur.*, (4th Ed.) 2762; 13 *C.J.* 854, 18 *C.J.S., Conversion,* § 7.

Moreover, it seems that the fiction of equitable conversion cannot be invoked until there are funds for distribution or payment, whether from the sale of property or the collection of rents therefrom; it will not be applied to reduce unsold lands to the impossible process of administration or disposition. *In re Hazelton*, 77 *Misc.* 419, 137 *N.Y.S.* 937, 939. The rents from the testator's Delaware real property present no problem; but the duties of the trustee in administering the rents from that part of the Line House property located in Pennsylvania must be determined. Furthermore, Mrs. Ward is occupying and using the testator's dwelling house and the adjoining farm, and there are no rents therefrom to be administered, or other immediate questions relating thereto to be considered.

It seems that fiction should play no part in determining questions involving conflict of laws. See *Beale Conf. Laws,* § 209.1; *In re Berchtold,* 1923, 1 *Ch.* 192. Moreover, no decision of this court on any other theory could bind the Pennsylvania courts. *Norris v. Lloyd,* 183 *Iowa* 1056, 168 *N.W.* 557. It is true that ordinarily in determining rights to a fund, the Pennsylvania courts seem to have applied the usual conversion fiction when there was an unconditional testamentary direction to sell real property (*In re Rambo's Estate,* 266 *Pa.* 520, 109 *A.* 671; *McClure's Appeal,* 72 *Pa.* 414; *In re Bergdoll's Estate,* 258 *Pa.* 108, 101 *A.* 950), but no pertinent conflict of law case is cited.

A devise of land under a trust to sell does not remove the land from the power of the state of its situs. *Beale Conf.Laws,* § 251.4. The *Restatement of the Conflict of Laws* (§ 249) lays down what seems to be the logical rule.

"The validity and effect of a will of an interest in land are determined by the law of the State where the land is.

\* \* \* \* \* \*

"(c) A will of an interest in land is governed by the law of the State where the land is in spite of a direction in the will to convert the land into personalty.

"(d) An interest in land may for certain purposes be treated as personal property to which the same rules of law are applicable as are applicable to interests in movables (see § 208, Special Note). But for the purposes of determining the validity of a testamentary disposition, all interests in land are treated as real property and the law of the place where the land is controls. \* \* \*."

The English courts seem to apply a similar rule in conflict of law cases. *In re Berchtold, supra; Beale Conf.Laws,* § 209.1.

There is American authority in support of the equitable conversion theory in such cases (*Hope v. Brewer,* 136 *N.Y.* 126, 32 *N.E.* 558, 18 *L.R.A.* 458; *Chamberlain v. Chamberlain,* 43 *N.Y.* 424; *Land, Trusts Conf.Laws* 29, 32, 33, 34, 201, 203; *Mount v. Tuttle,* 183 *N.Y.* 358, 76 *N.E.* 873, 2

*L.R.A. (N.S.)* 432; see also, *Penfield v. Power,* 1 *N.D.* 216, 46 *N.W.* 413), but the *Restatement* rule is based on reality, and not on fiction.

Until the Line House property shall have been sold and the proceeds from the Pennsylvania part transmitted to the Delaware trustee its general administration is necessarily governed by the laws of the State of Pennsylvania, *Lands, Trusts Conf. Laws* 201, 241; *Beale Conf.Laws,* § 251.4. No remarks of the court in *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903, were intended to be inconsistent with that settled rule. But, upon payment, the rents from the Line House become personal property, and as they are to be added to the income in the hands of the Delaware trustee, to be held and administered according to the laws of this State, it seems that the accumulation provision of Christopher L. Ward's will does not violate the Pennsylvania statute; no funds are to be accumulated in that State. See *Vansant v. Roberts, supra; Land, Trusts Conf.Laws,* § 58.

*Section* 4400 of the *Revised Code of* 1935 is not precisely in point but, in the absence of a controlling statutory provision, the trustee should account for its administration of the trust in the office of the Register in Chancery for New Castle County, where the business of the trust is being conducted. It is assumed that no Pennsylvania statutes, affecting the rights of non-resident testamentary trustees, will present any unsurmountable problems with respect to the future receipt of rents from Pennsylvania real property. See 20 *Purdon's Stat.,* §§ 991, 999.

A decree will be entered in accordance with this opinion.